POCAHONTAS ELECTRONICS *v.* DIRECTOR,
DEPARTMENT of WORKFORCE SERVICES,
and Dotty Davis

E 05-257                                    240 S.W.3d 130

Court of Appeals of Arkansas
Opinion delivered September 27, 2006

*Joseph Grinder*, for appellant.

*Allan Pruitt*, for appellees.

DAVID M. GLOVER, Judge. Appellee Dotty Davis was employed by appellant, Pocahontas Electronics, as a data-entry clerk. The history of appellee's claim for unemployment benefits was as follows: she was initially disqualified by the Department of Workforce Services because it found that she left her work voluntarily and without good cause connected to the work; she appealed to the Appeal Tribunal, which affirmed the initial denial of benefits; and she then appealed to the Board of Review, which reversed the Appeal Tribunal and concluded that appellee voluntarily left her job with good cause connected to the work. Appellant challenges the Board of Review's conclusion. We affirm.

The facts of this case are essentially undisputed. Davis explained at the hearing before the Appeal Tribunal that in the spring of 2005, she became aware that Nancy Geelhoed, one of the owners of Pocahontas Electronics, suspected her of using methamphetamine, and that Geelhoed had talked to her own ex-son-in-law about those suspicions. Davis confronted Geelhoed about

the situation. Geelhoed confirmed not only that she had talked to her ex-son-in-law about her suspicions, but also that she believed them to be true. Davis denied that she was using drugs, and Geelhoed called her a "f - - - ing liar." Approximately fifteen minutes later, Davis turned in her keys to the building and left. She did not speak to the other co-owner, Zachary Geelhoed, who was her day-to-day supervisor, because he was not on the premises at the time. Apparently, cell-phone reception was poor, and appellee's efforts to call him, as well as his efforts to return her calls, were unsuccessful.

Nancy Geelhoed explained that she spoke to her ex-son-in-law at her daughter's suggestion because he had formerly used methamphetamine and the daughter thought that he could help identify the signs or indications of meth use. She acknowledged that when appellee confronted her and denied using drugs that she called appellee a liar and might have used the phrase "f - - - ing liar."

*Standard of Review*

As this court explained in *Perdrix-Wang v. Director*, 42 Ark. App. 218, 221, 856 S.W.2d 636, 638 (1993):

> Arkansas Code Annotated § 11-10-513 (1987) provides in pertinent part that an individual shall be disqualified from receiving unemployment benefits if she left her last work "voluntarily and without good cause connected with the work." Ark. Code Ann. § 11-10-513(a)(1). A claimant bears the burden of proving good cause by a preponderance of the evidence. *Harris v. Daniels*, 263 Ark. 897, 567 S.W.2d 954 (1978); *Tate v. Director*, 267 Ark. 1081, 593 S.W.2d 501 (Ark. App. 1980). Good cause has been defined as a cause that would reasonably impel the average able-bodied, qualified worker to give up his or her employment. *Teel v. Daniels*, 270 Ark. 766, 606 S.W.2d 151 (Ark.App. 1980). It is dependent not only on the good faith of the employee involved, which includes the presence of a genuine desire to work and to be self-supporting, but also on the reaction of the average employee. *Id.* In determining the existence of good cause for voluntarily leaving one's work under § 11-10-513, factors to be considered include the degree of risk to one's health, safety, and morals, and her physical fitness, prior training, and experience. Ark. Code Ann. § 11-10-515(c) (Supp. 1991). What constitutes good cause is ordinarily a question of fact for the Board to determine from the particular circumstances of

each case. *Roberson v. Director*, 28 Ark. App. 337, 775 S.W.2d 82 (1989); *Rose v. Daniels*, 269 Ark. 679, 599 S.W.2d 762 (Ark. App. 1980).

On appeal, the findings of fact of the Board of Review are conclusive if they are supported by substantial evidence. Ark. Code Ann. § 11-10-529(c)(1) (1987); *Feagin v. Everett*, 9 Ark. App. 59, 652 S.W.2d 839 (1983). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Victor Industries Corp. v. Daniels*, 1 Ark. App. 6, 611 S.W.2d 794 (1981). We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings. *Feagin v. Everett, supra.* Even when there is evidence upon which the Board might have reached a different decision, the scope of judicial review is limited to a determination of whether the Board could reasonably reach its decision upon the evidence before it. *Id.*

■ Appellant's argument on appeal is that the Board's decision is not supported by substantial evidence and that the Board failed to take into consideration appellee's failure to take appropriate steps to rectify the problem, which appellant contends would have included an offer to submit to a drug test. The Board, however, did not base its decision upon the fact that Geelhoed talked to her ex-son-in-law about her suspicions of appellee's drug use. Rather, it was the fact that when Geelhoed accused appellee of using methamphetamine and appellee denied such use, Geelhoed then called her a "f - - - ing liar," which convinced the Board that such a confrontation would reasonably impel an average able-bodied, qualified worker to give up his or her employment. According to the Board's opinion:

> There is nothing particularly wrong with the co-owner asking her former son-in-law about the symptoms of illegal drug use or revealing that she "suspected" the claimant of using [methamphetamine]. However, the co-owner accused the claimant of using [methamphetamine] and when the claimant denied using the illegal drug, the owner called her a "f[- - -]ing liar." . . . The evidence does not establish that the claimant used the illegal drug, although it is understandable that the employer might have suspected it. The claimant acted in good faith when she confronted the co-owner to deny the allegation and try to prevent the spread of such an allegation. The employer's response (calling the claimant a 'f[- - -]ing liar') would have impelled the average, able-bodied, qualified individual to give up the job.

Viewing the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings, we hold that they are supported by substantial evidence.

Affirmed.

HART and CRABTREE, JJ., agree.