Cite as 2023 Ark. App. 32

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. E-22-7

| | | |
|---|---|---|
| ERIN DANIELS | | Opinion Delivered February 1, 2023 |
| | APPELLANT | |
| | | APPEAL FROM THE ARKANSAS BOARD OF REVIEW |
| V. | | [NO. 2021-BR-03614] |
| | | |
| DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES; AND PRODUCERS RICE MILL, INC. | | |
| | APPELLEES | REVERSED AND REMANDED |

**CINDY GRACE THYER, Judge**

In this unbriefed employment-security case, Erin Daniels appeals the Arkansas Board of Review's decision denying his claim for unemployment benefits on a finding that he voluntarily left last work without good cause connected with the work. We reverse and remand.

Our standard of review in unemployment-insurance cases is well settled. We do not conduct de novo reviews in appeals from the Board. *Dillinger v. Dir.*, 2020 Ark. App. 138, 596 S.W.3d 62. Instead, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Board's findings of fact. *Rockin J Ranch, LLC v. Dir.*, 2015 Ark. App. 465, 469 S.W.3d 368. We accept the Board's findings of fact as conclusive if supported by substantial evidence, which is such relevant evidence that a

reasonable mind might accept as adequate to support a conclusion. *Id.* Even when there is evidence on which the Board might have reached a different decision, our scope of judicial review is limited to a determination of whether the Board could have reasonably reached the decision rendered on the basis of the evidence presented. *Keener v. Dir.*, 2021 Ark. App. 88, 618 S.W.3d 446. We defer credibility calls to the Board as the finder of fact as well as the weight to be accorded to testimony presented to the Board. *Id.* While our role in these cases is limited, however, we are not here to merely ratify the decision of the Board. *Boothe v. Dir.*, 59 Ark. App. 169, 954 S.W.2d 946 (1997). Instead, our role is to ensure that the standard of review has been met. *Id.*

Daniels worked at Producers Rice Mill from April 2019 until June 2019, when, according to his application for unemployment benefits, he was terminated by his supervisor. His employer disputed Daniels's account, asserting that he voluntarily quit and was a "no call/no show." The Division of Workforce Services denied Daniels's application for benefits, finding that he was "discharged from [his] job on 6/21/19 because [he was] absent and failed to properly notify the employer. The claimant's action constitutes misconduct connected with the work."

Daniels timely appealed to the Arkansas Appeal Tribunal ("the Tribunal"), asserting that he was not discharged from his job for absenteeism; he claimed that he was told he was fired "for not doing a job duty." The Tribunal held a hearing at which Daniels and Michelle Key, his employer's human-resources representative, testified. Key testified that Daniels was a "stacker" at Producers Rice Mill. She stated that his last day was June 19, 2019. When

2

asked why he was no longer employed, Key said that he quit: "He was caught sleeping and then did not return the next two days. So we took that as a voluntary quit." She added that he did not attempt to return to work and did not call in the two days that he was absent after his last day of work.

When Daniels was permitted to ask questions of Key, he inquired whether she was aware that he had been called into the office of his supervisor, Ms. Gale, and told that he was terminated. Key answered that Ms. Gale was not the supervisor and did not have the authority to terminate anyone. Daniels responded that if Ms. Gale had not told him not to return, he would still be working there. Key conceded that she was not present for the discussion between Daniels and Ms. Gale but rather obtained her information from Daniels's employment record.

The hearing officer asked Daniels what Ms. Gale's job title was, and he answered that she was "the one every day that put us in position, told us everything, who got onto people. From my understanding, she was the supervisor." Daniels explained that Ms. Gale brought him into her office and told him that he was being discharged because she had been told that he was asleep. He did not go to human resources to discuss his situation, saying he "left it alone because it was out of my hands. I didn't know exactly what to do or how to––I didn't know what to do besides, you know, besides what she told me." He concluded his testimony by reiterating that if he had not been terminated, he would still be there.

The Tribunal subsequently issued a decision affirming the Division's determination. The Tribunal found that Daniels thought he had been terminated when he was reprimanded

for sleeping on the job and stopped reporting to work; it concluded that he "quit his work by not continuing to report for work after his reprimand." The Tribunal thus found that the preponderance of the evidence indicated that Daniels "voluntarily left last work because he assumed that he had been discharged" and modified the Division's reasoning to find that he left last work without good cause connected with the work. Daniels timely appealed to the Board of Review, which adopted and affirmed the Tribunal's decision. Daniels timely appealed to this court, where he reiterates his argument that he did not quit but was instead terminated and told not to return.

Pursuant to Arkansas Code Annotated section 11-10-513(a) (Supp. 2021), an individual shall be disqualified for unemployment benefits if he or she voluntarily and without good cause connected with the work left his or her last work. Whether there is good cause for an employee to quit his or her job is a question of fact. *Claflin v. Dir.*, 53 Ark. App. 126, 127, 920 S.W.2d 20, 21 (1996). Good cause must be determined in the light of the facts in each case, *Keener v. Dir.*, 2021 Ark. App. 88, 618 S.W.3d 446, but it has generally been defined as "a cause that would reasonably impel the average able-bodied, qualified worker to give up his or her employment." *Carpenter v. Dir.*, 55 Ark. App. 39, 41, 929 S.W.2d 177, 178 (1996). It depends not only on the good faith of the employee involved, which includes the presence of a genuine desire to work and to be self-supporting, but also on the reaction of an average employee. *Keener, supra.*

Here, the facts show that Daniels did not show up for work because he reasonably believed he had been terminated by someone who he believed had the authority to do so.

We conclude that the "average employee"—especially one who had been working for his employer for only two months—would understand he should not come back to work after his supervisor advised he had been terminated. *See Welch v. Dir.*, 2019 Ark. App. 498, 588 S.W.3d 787 (reversing denial of unemployment benefits when employee failed to report for work because she had received a text message telling her not to return to work). Accordingly, we reverse the Board's decision and remand for further action consistent with this opinion.

Reversed and remanded.

HARRISON, C.J., and VIRDEN, J., agree.

*Erin Daniels*, pro se appellant.

*Cynthia L. Uhrynowycz*, Associate General Counsel, for appellee Department of Workforce Services.